UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**MICHAEL A AMEN** and **CHERYLL K AMEN**,<br><br>             Debtors. | Case No. **12-61225-7** |
| **JOSEPH V. WOMACK**,<br><br>             Plaintiff.<br><br>-vs-<br><br>**SAMUEL FOUSEK**,<br><br>             Defendant. | Adv No. **13-00042** |

## MEMORANDUM of DECISION
## and ORDER

At Butte in said District this 1st day of April, 2014.

In this adversary proceeding the Plaintiff/Trustee, Joseph V. Womack ("Womack") of Billings, Montana, seeks entry of judgment against Defendant Samuel Fousek ("Fousek") in the amount of $50,333.59 as payment for yardage, feed and veterinary costs and supply services provided by the Debtor Michael Amen ("Amen") to Fousek from November 4, 2010, through March 14, 2011. Fousek filed an answer denying that he owes anything to Amen. After due notice, trial of this adversary proceeding was held on March 11 and 12, 2014, at Billings. Womack appeared and testified, represented by attorneys Trent M. Gardner and Jeffrey J.

1

Tierney of Bozeman, Montana. Fousek also appeared and testified, represented by attorney Gary S. Deschenes of Great Falls, Montana. The Court also heard testimony from Angie Fousek ("Angie") and Amen.

Prior to trial, Womack filed a Motion to Exclude Exhibits at docket no. 46, as did Fousek at docket no. 53. At trial, Womack and Fousek agreed to withdraw their motions to exclude and agreed to the admission into evidence of Womack's Exhibits 1 through 17, and Fousek's Exhibits A through Q.

## JURISDICTION

The "jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Battleground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1130 (9th Cir. 2010) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)). In general, a bankruptcy court's jurisdiction is prescribed by 28 U.S.C. § 1334(b). In addition to granting jurisdiction to bankruptcy courts over bankruptcy cases, the statute provides that "the district courts [and by reference pursuant to 28 U.S.C. § 157, the bankruptcy courts] shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

This Court has jurisdiction in this adversary proceeding under 28 U.S.C. § 1334(b). Womack asserts that this is a core proceeding within the meaning of 28 U.S.C. § 157(b) and that this Court has the authority to enter a final decision. Fousek concurs.

## FACTS

Womack commenced this Adversary Proceeding on October 15, 2013. Womack alleges in his complaint that between November of 2010 and March of 2011, Amen provided yardage,

feed and veterinarian costs and supply services to Fousek in the amount of $50,333.59, that Amen billed Fousek for such amount, and that Fousek has not paid the amount owed. Fousek does not dispute that Amen provided yardage, feed and veterinarian costs and supply services to Fousek, but counters that such services were provided in exchange for payment on trucking bills Amen owed Fousek.

In June of 2008, Fousek, Fousek Trucking, Inc., or Steven Fousek Trucking transported several loads of cattle for Amen from Billings, Montana, to a feedlot in Darr, Nebraska. Per Exhibit A, Fousek billed Amen for such trucking services as follows:

| Date | Invoice | Amount |
|---|---|---|
| June 10, 2008 | Invoice 30222 | $2,812.00 |
| June 10, 2008 | Invoice 1801 | $2,812.00 |
| June 11, 2008 | Invoice 1779 | $5,624.00 |
| June 12, 2008 | Invoice 1780 | $5,624.00 |
| June 12, 2008 | Invoice 30223 | $2,812.00 |
| June 14, 2008 | Invoice 30224 | $2,812.00 |
| June 14, 2008 | Invoice 1781 | $1,281.00 |

Amen then contacted Fousek and asked him to move the cattle from the Darr Feedlot to a feedlot in Ainsworth, Nebraska. When Fousek's trucks arrived at the Darr Feedlot, Darr Feedlot would not release the cattle until Amen's feed bill was paid in full. Fousek contacted Amen and agreed to pay the Darr Feedlot bill on Amen's behalf so the cattle could be moved. On behalf of Amen, Fousek wired $20,729.03 to Darr Feedlot and paid an additional $20.00 in associated wire fees. *See* Exhibit G, showing a transfer from Fousek Trucking, Inc.'s checking account in the total amount of $20,749.03. Fousek then moved Amen's cattle to the Ainsworth Feedlot and per Exhibit A, billed Amen for such trucking services as follows:

| Date | Invoice | Amount |
|---|---|---|
| June 26, 2008 | Invoice 30278 | $748.00 |
| June 26, 2008 | Invoice 30268 | $748.00 |
| June 27, 2008 | Invoice 30269 | $748.00 |

3

  June 27, 2008   Invoice 30270   $748.00
  June 27, 2008   Invoice 30279   $748.00
  June 27, 2008   Invoice 30280   $748.00
  June 28, 2008   Invoice 30271   $748.00
  June 28, 2008   Invoice 30281   $748.00

  On July 2, 2008, Fousek's spouse, Angie, sent Amen a statement showing an outstanding balance of $49,526.03; $22,422.00 for transporting Amen's cattle to Darr; $6,336.00 for transporting the cattle from Darr to Ainsworth; $20,749.00 for the money order; and $18.60 for postage. The statement, sent from Fousek Trucking, Inc., PO Box 88, Wagner, SD 57380-008, reflects that "[s]ervice charges are computed on an annual rate of 24% or a monthly rate of 2%." Per the invoices in Exhibit A, the July 2, 2008, statement reflected in Exhibit I should have shown a balance owed of $23,777 (for moving the cattle from Montana to Darr), $5,984.00 (for moving the cattle from Darr to Ainsworth), $20,749.03 (for the money order) and $18.60 (for postage), or $50,528.63.

  Angie explained that after sending the handwritten statement dated July 22, 2008, she updated that same handwritten statement on November 14, 2008, and again sent it to Amen. The updated statement reflected a payment made by Amen on July 15, 2008, of $20,740.00[1] for the money order and included a finance charge of $2,302.88. Angie once again updated that same statement and sent it to Amen on or about February 12, 2009. The February 12, 2009, statement included an additional finance charge of $1,865.33 and by February 12, 2009, the statement included the words "Past Due" in large letters in the upper lefthand corner. Exhibit D is the

---

[1] On July 15, 2008, Fousek made a deposit of $29,503.00 into Fousek Trucking, Inc.'s checking account. Exhibit H, bates stamp 1057, reflects that such deposit included a check from Amen in the amount of $20,740.

4

returned receipt for a letter sent by Angie to Amen in February of 2009. The return receipt was signed by Amen. Exhibit D, coupled with Angie's testimony, establishes that Angie sent the statements to Amen and was requesting payment for the hauling charges.

On February 14, 2009, Angie carried a balance forward to a new statement of $32,954.24. By the Court's calculation, the balance carried forward should have been $33,956.84 ($50,528.63 less the payment of $20,740.00 plus the finance charges of $2,302.88 and $1,865.33). On September 22, 2009, Amen wrote check number 6130 to Fousek Grain & Fertilizer for $5,050. Angie posted a credit to Amen's account on October 17, 2009, and sent Amen another statement on that date. On December 31, 2009, Angie added another finance charge to Amen's account of $1,116.17. The statement Angie sent to Amen on December 31, 2009, showed a balance owed of $29,020.41. Using Angie's numbers, the balance owed as of December 31, 2009, should have been $30,023.01.

Amen does not dispute that Fousek hauled and moved cattle for him, but disputes that he owed Fousek anything for the trucking bills, explaining that the feedlots would have covered the incoming freight charges. Fousek disagreed, testifying that very rarely will feedlots cover the freight charges for incoming cattle. Fousek, who is in the business of hauling cattle, testified that generally, the owner of the cattle pays the cost of trucking cattle to feedlots. Fousek noted, however, that auction barns will often pay the trucking bills for incoming cattle because they simply deduct incoming freight charges from the auction proceeds.

According to Amen, he and Fousek had been talking back and forth on other matters, and Fousek mentioned he had some cattle that needed to be fed. Amen testified he agreed to feed Fousek's cattle and expected to be compensated. Fousek disagreed, testifying that sometime in

5

2010, Amen had extra feed so Fousek and Amen reached an agreement whereby Amen would feed Fousek's cattle in exchange for the past due trucking bill. Amen maintains he has no recollection of such an agreement.

When asked to explain why he made a payment of $5,050 to Fousek in 2009, Amen explained that because the check was made payable to Grain & Fertilizer that he must have bought fertilizer or pesticides from Fousek. Amen has no written records to reflect a purchase of fertilizer or pesticides, and Fousek has no recollection of Amen purchasing any fertilizer or pesticides. Fousek deposited the check of $5,050 in Fousek Trucking, Inc.'s bank account on October 5, 2009.

Fousek and Amen agree that Fousek moved a number of cattle to Amen's feedlot on November 4, 2010, and moved additional cattle to Amen's feedlot on November 11, 2010. Amen sent invoices to Fousek reflecting the charges associated with feeding the cattle. Exhibit 1 is a collection of invoices that start on November 4, 2010, with 168 head of cattle and end on March 14, 2011, with 269 cattle. The total of the invoices in Exhibit 1 is $50,333.59. Those invoices form the basis for Womack's request for entry of judgment against Fousek in the amount of $50,333.59.

Exhibit 6 is a collection of "corrected" invoices that Amen sent Fousek. The invoices in Exhibit 6 are accompanied by a handwritten note, dated "2/1," that reads:

> Sam- On your first bill I made a mistake entering head count. I put 168 it should have been 138 so yardage was overstated through 1/15 bill. Here are the corrected bills. Thanks, Mike

The total of the invoices in Exhibit 6 is $48,727.13.

Neither Fousek nor Angie were sure of the exact number of cattle sent to Amen's ranch,

6

but Angie believed, based upon the corrected invoices–which were accompanied by a note that Amen admits writing-- that the correct head count as of November 4, 2010, was 138, and not 168.  Amen could not explain which set of invoices were actually correct.  Womack's Exhibit 2 is a collection of Cattle Inspection Certificates from The State of Montana Department of Livestock, Brand Enforcement Division.  The Cattle Inspection Certificates dated November 4, 2010, show 168 of Fousek's cattle were moved on November 4, 2010.  The parties agree that Fousek removed his cattle from Amen's place on March 14, 2011.  Exhibit 2 shows 269 head of cattle belonging to Fousek were moved on March 14, 2011.  The Court concludes that the Cattle Inspection Certificates, which correspond to Exhibit 1, identify the correct number of cattle that Amen fed for Fousek.

In the statement shown in Exhibit J, which Angie first mailed to Amen on October 17, 2009, Angie kept a running total of the amount Amen still owed for the 2008 trucking bills.  On January 15, 2011, Angie gave Amen a credit of $25,456.84 for "Credit on feed bill."  The credit of $25,456.84 corresponds to the first three "corrected" invoices sent by Amen to Fousek in Exhibit 6.  The "corrected" bills show feeding, yardage and miscellaneous costs totaling $9,665.04 for November 4 through November 30, $10,535.20 for December 2010, and $5,256.60 for January 1 through January 15, 2011.  Angie next posted a credit of $5,831.88 to Amen's statement on January 31, 2011, which amount corresponds to the invoice Amen sent Fousek for January 16 through January 31, 2011.  Per Angie's records, the amount Amen owed on the 2008 trucking bill as of January 21, 2011, was $2,216.59.

Debtors filed their bankruptcy petition on July 27, 2012.  Although Amen maintains that Fousek owes him $50,339.59, as reflected in Exhibit 1, Amen did not include an amount

7

receivable from Fousek in his bankruptcy schedules. Debtors' schedules, however, disclose a secured obligation of $950,000 owing to RABO Agrifinance, Inc. In their statement of financial affairs, Debtors did not list any lawsuits or administrative proceedings to which the Debtors were a party within one year of their petition date. Debtors disclosed that stock and a pickup truck were seized by creditors on May 1, 2012, and that a "65,000.00 beet digger, defoliator, air drill planter" was repossessed, foreclosed or returned to US Bank on May 1, 2012.

Proof of Claim No. 21 filed by RABO Agrifinance, Inc. on April 24, 2013, reflects RABO Agrifinance, Inc. secured a Decree of Foreclosure in the Montana Thirteenth Judicial District Court, Yellowstone County, Case No. DV-11-1297 on April 16, 2012. RABO Agrifinance, Inc. also filed a motion to modify stay in Debtor's main bankruptcy case on September 13, 2012, asserting "Debtors agreed to make annual payments due on December 1st. Debtors failed to make the annual payments in 2010 and 2011. The annual payment is $87,127.03." Without opposition from Debtors, the motion to modify stay was granted on October 2, 2012. Debtors' property was sold at Sheriff's Sale on January 25, 2013. RABO Agrifinance, Inc.'s Proof of Claim No. 21 is for a deficiency of $124,189.91 still owing.

When asked why Fousek was not included in Debtors' schedules, Amen explained that he was suffering from an illness in early 2011 that required hospitalization. Because he was going into the hospital, Amen testified that he contacted Fousek and asked Fousek to send payment for the feeding of Fousek's cattle directly to RABO Agrifinance, Inc.[2] Amen believed that Fousek had made the payment, and thus, Debtors did not include the alleged amount owed by Fousek in

---

[2] The obligation owed to RABO Agrifinance, Inc. stems from a Promissory Note dated March 10, 2009.

their schedules, and have never amended their schedules to include this asserted asset of the bankruptcy estate.

Amen testified that it was only after the bankruptcy was filed and he was going through his 1099s that he discovered in early 2013 that Fousek had not made the payment to RABO Agrifinance, Inc. Amen then went to Womack and said that Fousek still owed Amen money.

Womack proceeded to send Fousek a letter dated September 10, 2013, which reads in part:

> The records of the Debtor indicate that you owe $50,333.59 to them for cattle feeding at Mike Amen's feet lot in Billings, Montana commencing in November of 2010 and completed in March of 2011. This obligation is now property of the bankruptcy estate and I am entitled recover [sic] these funds pursuant to the United States Bankruptcy Code.
>
> Mike Amen sent you a bill for the amount owed one week after services were completed. I understand that you are contending that the bill has been paid per an oral agreement with Mike by you paying the amount owed to Robo Bank, a creditor of Mike's. Mike has advised me that he does not believe that any such payment was made and has asked you for proof of such payment but none has been provided to him.
>
> Therefore, demand is made for you to pay the $50,333.57 by return mail no later than September 15, 2013.

Fousek did not respond to Womack's September 10, 2013, letter. Womack then commenced this Adversary Proceeding on October 15, 2013. In response to Womack's complaint, Angie prepared a letter dated November 6, 2013, which Fousek signed, stating that Amen had never paid for the 2008 trucking bill, that with finance charges, the bill was $109,427.48, but that Fouseks would be "willing to settle this bill if Mike sends up $15000.00." At that time, Angie prepared a new statement, based on the invoices from 2008, and also attached thereto the feeding invoices Amen sent to Fouseks in 2011.

9

## APPLICABLE LAW and DISCUSSION

Amen testified that he did not discover that Fousek had not paid RABO Agrifinance, as agreed in early 2011, until 2013 while reviewing 1099s. Amen's testimony on this matter is not supported by the evidence. RABO Agrifinance, Inc. secured a Decree of Foreclosure on April 16, 2012, and arguably commenced its foreclosure proceeding sometime prior to that date. RABO Agrifinance then filed a motion to modify stay in Debtor's main bankruptcy case on September 13, 2012, which was mailed to Debtors at their address in Billings, Montana, maintaining at that time that Debtors had failed to make the payment of $87,127.03 due December 1, 2010. Debtors knew, or should have known, by early 2012 that the 2010 payment had not been made.

Amen nevertheless continues to maintain that Fousek owed $50,333.59 as of March 14, 2011. The Court is not persuaded by Amen's testimony. If Fousek did in fact owe $50,333.59 as of March 14, 2011, which the Court finds he did not, Amen still would have owed RABO Agrifinance an additional amount for the $87,127.03 payment that was due December 1, 2010. The fact that RABO Agrifinance had sought to foreclose Debtors' property sometime prior to April 16, 2012, coupled with the absence of any explanation as to why Amen did not contact RABO Agrifinance to confirm Fousek's payment or to make the additional payment still required, convinces this Court that Amen did not contact RABO Agrifinance because he did not have an agreement with Fousek whereby Fousek would make a payment to RABO Agrifinance.

The Court's finding that Amen was not anticipating any payment by Fousek to RABO Agrifinance is buttressed by Amen's own testimony that feedlots have automatic liens on cattle

in their possession and lose those liens once the cattle are removed.[3] Amen testified that he follows this same policy and requires payment in full for feeding cattle, but for reasons unexplained, did not follow that policy with respect to Fousek by requiring payment in full before Fousek moved his cattle from Amen's property. The Court finds that Amen did not follow his only policy in this instance because he fed Fousek's cattle in exchange for the 2008 trucking bills.

Amen also argues that such an arrangement, as stated by Fousek, would have allowed Fousek to rack up a feeding bill twice as large as the 2008 trucking bills. While that might have been the case, Amen could have always fallen back on his practice of not releasing the cattle to Fousek until the bills were settled accordingly. The fact that Amen released Fousek's cattle convinces this Court that Amen believed, as of March 14, 2011, that the bills were settled and nothing further was owed by either party.

Amen also asserts he paid Fousek in full for the Darr feedlot bill when he made the payment of $20,740.00 on July 15, 2008. The fact that Fousek has statements showing otherwise, coupled with the fact that Angie was sending Amen certified mail in February of 2009, convinces this Court that Amen's bill was in fact not paid in full and that Amen still owed

---

[3] MONT. CODE ANN. § 71-3-1211(2) provides:

(a) If there is an express or implied contract for keeping, feeding, herding, pasturing, or ranching stock, a rancher, farmer, agister, herder, hotelkeeper, livery, stablekeeper, or reproductive technology business to whom any horses, mules, cattle, sheep, hogs, or other stock are entrusted has an agister's lien upon the stock for the amount due for keeping, feeding, herding, pasturing, or ranching the stock.

(b) A person holding an agister's lien pursuant to subsection (2)(a) may retain possession of the stock until the amount due is paid.

a delinquent trucking bill into 2010.

Based upon the evidence, and notwithstanding Amen's belief to the contrary, the Court finds that Amen and Fousek reached an oral agreement whereby Amen would feed Fousek's cattle in exchange for payment in full of the past due trucking bill. After March 14, 2011, Fousek did not send any additional statements to Amen, and Amen did not seek to collect any amounts from Fousek because the debts between the two men were settled in full at that time. Such finding explains why Debtors did not include any amounts owing from Fousek in their schedules, even after the mortgage went into default, and after the foreclosure action was initiated. For the reasons discussed in this Memorandum of Decision,

IT IS ORDERED that Womack's Motion to Exclude Exhibits filed at docket no. 46 is denied as moot; and Fousek's Motion to Exclude Plaintiff's Exhibits and Witnesses filed at docket no. 53 is denied as moot

IT IS FURTHER ORDERED that a separate judgment shall be entered in favor of the Defendant, Samuel Fousek; and this Adversary Proceeding is dismissed with prejudice.

BY THE COURT

_Ralph B. Kirscher_
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana